NOTICE
Decision filed 02/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230518-U

NO. 5-23-0518

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 19-CF-809 |
| | ) | |
| NATHAN C. PARNELL, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOLLINGER* delivered the judgment of the court.
Presiding Justice Cates and Justice Boie concurred in the judgment.

**ORDER**

¶ 1     *Held:* We affirm the first-stage dismissal of defendant's *pro se* postconviction petition based on the circuit court's finding that it was frivolous and patently without merit.

¶ 2     Defendant, Nathan C. Parnell, pleaded guilty to two counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2018)), one count of attempt first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)), and one count of aggravated domestic battery (*id.* § 12-3.3(a-5)). After a sentencing hearing, defendant was sentenced to 15 years on each count of aggravated criminal sexual assault, 15 years for attempted first degree murder, and 10 years for aggravated domestic battery, with all four sentences to be served consecutively for a total aggregate sentence of 55

---

*Justice Vaughan was originally assigned to the panel. Justice Bollinger was later substituted on the panel and has read the briefs.

1

years. On direct appeal, the Fourth District Appellate Court affirmed defendant's convictions for aggravated sexual assault and attempt first degree murder, but vacated defendant's conviction for aggravated domestic battery, finding that, in combination with the conviction for attempted first degree murder, it violated the one-act, one-crime rule. *People v. Parnell*, 2022 IL App (4th) 210162-U. Subsequently, defendant filed a postconviction petition. The circuit court dismissed defendant's postconviction petition at the first stage and defendant appeals that dismissal. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      A recitation of all relevant facts are contained in the Fourth District's disposition of defendant's direct appeal. See *id.* As such, we limit our discussion to those facts relevant to our disposition of this appeal and include additional facts in the analysis section as needed to address defendant's specific arguments.

¶ 5      On May 31, 2019, defendant was charged with nine counts, all felonies, for conduct occurring from May 18, 2019, through May 19, 2019. An additional two counts, bringing the total number to 11 felonies, were added to his charges on June 12, 2019. On July 26, 2019, defendant pleaded guilty to 4 of the 11 counts: two counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2018)), one count of attempt first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)), and one count of aggravated domestic battery (*id.* § 12-3.3(a-5)). The only agreement in place at the time of the plea was that the remaining counts that were not part of defendant's plea would be dismissed, and a separate misdemeanor case would also be dismissed. The circuit court admonished defendant at the time of his plea of the possible sentences for each count, in addition to the fact that all four counts were required to run consecutively with one another.

2

¶ 6    At the time of the plea, the factual basis from the State indicated that defendant had become upset with R.L., his long-time paramour, when her phone died and she had not responded to his text messages while she was out of town for work. Upon her return on May 18, 2019, defendant was not home, but when he returned, he immediately grabbed R.L. and told her he was going to teach her what it was like to be kidnapped and raped. Defendant held R.L. captive for the next 20 hours. During that time, defendant subjected her to various forms of abuse, including calling her names, pulling off her clothing, dumping liquid on her, and physically battering her. At one point, defendant ripped all of R.L.'s clothes off and ordered her into a closet. He then threatened her with a screwdriver and pruning shears, telling her to imagine him killing her with the pruning shears. He took a belt and attempted to place it around her neck, however when R.L. was able to stop him, he instead placed his hands around her neck and told her, "I am going to kill you. I want you to look in my eyes. I want to be the last thing you see from your last breath." At that point, R.L. blacked out and began to urinate. While R.L. was trapped by defendant in the closet, he attempted to place his penis inside of her, but failed due to erectile dysfunction. He then digitally penetrated R.L., calling her a "dirty whore," and forced his penis into her mouth, causing her to choke.

¶ 7    On May 19, 2019, just before 10 a.m., R.L. fled the house, entirely naked. She reached her vehicle and drove to the law enforcement building where the Macon County Sheriff's Office was housed and entered the building. Defendant could be seen on camera pursuing R.L. around the basement of the building. R.L. then fled by vehicle to the Decatur Police Department, where she was able to flag down Sergeant Maxwell of the Decatur Police Department. R.L. was frantic and crying. R.L. waved at the black Ford Ranger defendant was driving, which fled. Defendant was apprehended by the Decatur Police Department a short time later.

¶ 8    Defendant was subsequently sentenced at a contested sentencing hearing on September 20, 2019. A presentence investigation report was filed prior to that date. That report showed that defendant had four prior felony convictions, one in 2004 for aggravated criminal sexual abuse and three from 2009-2014 for violation of the sex offender registry. It further indicated that defendant had been physically and sexually abused as a child by a friend of the family and that he was an insulin-dependent diabetic. It also revealed that defendant had plates and screws in his right knee from a prior fall. With regard to defendant's mental health, the report indicated he suffered from depression and admitted to having trouble controlling his anger. According to the report, defendant stated he had previously sought mental health treatment, but had stopped attending because he did not feel like it was helping. He also reported that he had begun sex offender treatment while incarcerated on an unrelated offense but had been released prior to completing treatment. Defendant indicated previous problematic alcohol consumption, but denied addiction, although he believed he was addicted to cannabis. Defendant also admitted to prior methamphetamine, cocaine and LSD usage.

¶ 9    At the sentencing hearing, R.L. read a victim impact statement and her daughter testified. R.L.'s daughter stated that after his arrest, defendant sent a letter to her grandmother's home, and another to her home. She testified that the letter sent to her home was addressed to a nickname that defendant used for her mother. Both letters were given to police. There were also several instances of a phone number from the Macon County jail, where defendant was being housed, ringing R.L.'s phone "non-stop." Those calls occurred even after defendant pleaded guilty. R.L. read a victim impact statement indicating that all positive memories she had of her time with defendant had been overshadowed by the events of May 18-19, 2019, and described in detail her memories of what occurred. R.L.'s statement discussed that she was still dealing with emotional fallout and lasting

trauma from those events and that "nothing will ever be the same." R.L. also stated that she was unsure she would ever be able to trust anyone again after what defendant had done to her. She indicated that she wished that she never had to "worry about this man ever walking the streets again, but I do and I will." R.L.'s statement further described her emotions, stating, "My life, my reality, my privacy, my solitude was taken away." And she told the circuit court, "a part of me did die that day." After R.L. read her statement to the court, the State had nothing further in aggravation.

¶ 10    Defendant presented no evidence in mitigation, but did make a statement in allocution. He stated that he did not remember everything about the events of May 18-19, 2019, but that he remembered enough and knew that R.L. had not made it up and would not lie to hurt him, so he believed he had done these "unforgivable crimes" as alleged. He said he would hate himself forever because of his actions, that he knew nothing could ever make it better, and implored R.L. to realize that she was "amazing" and that she should be proud of her strength. Finally, defendant told the circuit court, "I deserve to die but Illinois doesn't allow that. So I deserve to spend the rest of my days locked away so I can never hurt anyone again."

¶ 11    The State recommended a sentence of 15 years on each count for a total of 60 years. The State argued that none of the statutory factors in mitigation applied and that many factors in aggravation supported a lengthy sentence. The State contended that R.L. had suffered serious harm, not only physically, as the result of being beaten and choked to the point of blacking out, but emotionally as well. The State asserted that defendant's prior history of criminality, which included aggravated criminal sexual abuse, as well as the fact that he had attempted several times to contact R.L., including after the plea of guilty, indicated that he was likely to reoffend.

¶ 12    Counsel for defendant argued for a lesser sentence of 6 to 9 years for each count, totaling between 24-36 years. Defense counsel argued that defendant was remorseful and that remorse indicated that he was not beyond reform. Defense counsel further submitted that defendant had pleaded guilty to spare R.L. the pain of a trial and that had been defendant's intent since counsel had been appointed on defendant's behalf.

¶ 13    The circuit court sentenced defendant to 15 years for each count of aggravated criminal sexual assault and attempted murder, and an additional 10 years for aggravated domestic battery. In pronouncing its sentence, the circuit court found that the only two factors in mitigation that applied were that defendant had pleaded guilty and shown remorse. The circuit court also found several factors in aggravation applied, including the nature of the crime, the physical and emotional harm caused, defendant's criminal history, and the need for deterrence.

¶ 14    On October 10, 2019, defendant filed a *pro se* motion for reduction of sentence. In that motion, defendant stated, "The public defender told me I wouldn't get so many years if I took a [*sic*] open plea. And I am very remorseful and deeply sorry." Defense counsel filed an amended motion for reduction of sentence on August 13, 2020, arguing the sentence imposed was excessive. That motion was heard on August 14, 2020, and denied. Defendant appealed, case No. 4-20-0416,[1] and the matter was returned to the circuit court on an agreed motion for summary remand to allow for strict compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 15    A second amended motion for reduction of sentence was filed on February 23, 2021, along with a Rule 604(d) certificate, alleging defendant's sentence was excessive and that his convictions for attempted murder and aggravated domestic battery violated the one-act, one-crime rule. An

---

[1]After the Fourth District's remand, Macon County was redistricted from the Fourth District to the Fifth District. Ill. S. Ct., M.R. 30858 (eff. Dec. 8, 2021).

amended certificate was filed on March 1, 2021. That motion was heard on March 4, 2021. At that hearing, defense counsel argued that the one-act, one-crime doctrine[2] demanded that defendant's conviction for aggravated domestic battery be vacated, as it was based on the same act as his conviction for attempted first degree murder. The circuit court denied the second amended motion and another appeal followed. On direct appeal, the Fourth District Appellate Court found that the one-act, one-crime rule did apply and vacated defendant's conviction for aggravated domestic battery, and thus the 10-year sentence attached to it. *People v. Parnell*, 2022 IL App (4th) 210162-U. As a result, defendant was left with an aggregate sentence of 45 years. *Id.*

¶ 16    On April 3, 2023, defendant filed a *pro se* petition for postconviction relief. The pertinent text of that *pro se* petition read as follows:

"My conviction for aggravated domestic battery was vacated on 7/26/22, Case No: 19CF809, General No: 4-21-0162 Macon County. I am begging the Court to reconsider my sentences on Aggravated criminal sexual assa[u]lt I, II and Attempt first Degree murder. My aguement [*sic*] is that since my aggravated domestic Battery was vacated that my sentences should Not Be Ran consecutive, But concurrent, because my criminal history should not Be used as a Sentence Increase"

¶ 17    On June 7, 2023, the circuit court issued a written order dismissing defendant's postconviction petition, finding that defendant's claims had been previously adjudicated and were thus barred by *res judicata*; that said claims were forfeited as they could have been raised on direct

---

[2]"Under that rule [(one act, one crime)], it is impermissible to convict a defendant 'of multiple offenses that are based upon precisely the same single physical act.' [Citation.] An 'act' is 'any overt or outward manifestation [that] will support a different offense.' " *Parnell*, 2022 IL App (4th) 210162-U, ¶¶ 10-11 (quoting *People v. Johnson*, 237 Ill. 2d 81, 97 (2010), and *People v. King*, 66 Ill. 2d 551, 566 (1977)).

appeal; that defendant had not stated the gist of a constitutional claim; and that the petition was frivolous and patently without merit. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant construes his *pro se* postconviction petition as making a meritorious argument that defendant's aggregate 45-year sentence is constitutionally excessive or disproportionate under the eighth amendment's prohibition of cruel and unusual punishment and the Illinois Constitution's proportionate penalties clause. The eighth amendment of the United States Constitution proscribes "cruel and unusual punishments" (U.S. Const., amend. XIII), which "guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). The Illinois Constitution states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Specifically, defendant argues that the circuit court never considered the appropriate sentence for defendant once his conviction for aggravated domestic battery had been vacated. Defendant further argues that his sentence is excessive because no serious bodily harm was caused, and that not all applicable mitigating factors were considered, such as defendant's childhood abuse and poor health.

¶ 20    The State counters that defendant's arguments have been procedurally defaulted, arguing they are either *res judicata* or forfeited. The State asserts that defendant's claims were previously adjudicated on appeal, as his direct appeal affirmed the judgment on the merits of the sentence imposed after it vacated defendant's conviction for aggravated domestic battery and thus reduced his sentence by 10 years. The State also asserts that defendant is procedurally defaulted by the doctrine of invited error, as on direct appeal defendant requested that the appellate court review his sentence and specifically requested, as part of that review, that an aggregate sentence of 45

8

years be imposed. As a result of that appeal, defendant was then given exactly what he requested. In that regard, his sentence was reviewed and except for vacating one count pursuant to the one-act, one-crime rule, the appellate court affirmed the sentence, leaving defendant with the aggregate sentence of 45 years that he requested. Having participated in those proceedings and procured the outcome he then desired, the State asserts that defendant cannot now claim that sentence, too, was in error. In the alternative, the State asserts that the issue of the alleged excessive sentences on each of the separate sexual assaults and attempted strangulation was forfeited, as the question of the disproportionate excessiveness of the sentences could have been raised on direct appeal, just as it was in defendant's motions to reduce sentence. Finally, the State asserts that even if defendant's claims are not procedurally defaulted, in reviewing his claims on the merits, they are clearly frivolous and without merit as defendant's sentence was appropriate as to each count.

¶ 21 Defendant asserts in response that his claim is not procedurally defaulted. He contends that his claim is not barred by *res judicata* because the matter decided on direct appeal was whether the one-act, one-crime doctrine applied, not whether the sentences imposed were excessive. He further asserts that his claim that his sentences are excessively disproportionate is not forfeited because he could not have alleged it on direct appeal, as he now claims that his sentence is excessive for the three offenses for which he now stands convicted, and on his prior direct appeal, he stood convicted of four crimes. Further, defendant claims that invited error does not apply, as he was actively challenging his sentence at all times during his appeal, rather than acquiescing to it. Finally, defendant argues that his *pro se* petition arguably pled a claim that his sentences were excessive, and this court should reverse the circuit court and remand for second-stage postconviction proceedings.

9

¶ 22    Postconviction proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) proceed in three stages. *People v. Hodges*, 234 Ill. 2d 1, 10-11 (2009). In the first stage, the court examines the defendant's *pro se* petition and, taking the allegations within the petition and any attached affidavits as true unless "positively rebutted" by the record, including transcripts, determines whether or not the petition is "frivolous or patently without merit." 725 ILCS 5/122-1(a-5) (West 2022); *Hodges*, 234 Ill. 2d at 10, 16-17. If the court finds that the petition is "frivolous or patently without merit," it is summarily dismissed. *Id.* Defendant's burden at this stage is a "low" one and in order for a defendant's *pro se* petition to survive, it must merely present the "gist" of a constitutional claim. *Hodges*, 234 Ill. 2d at 9. A dismissal of a defendant's *pro se* postconviction petition is reviewed *de novo*. *Id.*

¶ 23    We first address the State's claim that defendant's claims have been procedurally defaulted on the grounds of *res judicata*, forfeiture, or invited error. In dismissing a defendant's postconviction petition as "frivolous or patently without merit," a court may consider whether those claims are barred by the doctrines of *res judicata*, forfeiture or other such conclusions of law. *People v. Blair*, 215 Ill. 2d 427, 444-47 (2005). The postconviction statute expressly contemplates the circuit court making conclusions of law at the first stage, and both *res judicata* and forfeiture are "inherently legal determinations." *Id.* Thus, if either the doctrine of *res judicata* or forfeiture apply to a claim, it will render an otherwise meritorious one frivolous, as it loses its basis in law. *Id.*

¶ 24    *Res judicata* procedurally bars a court from considering in further proceedings any matters that were previously decided on appeal. *Id.* at 443. Forfeiture bars from consideration claims which could have been brought on direct appeal but were not. *Id.* at 443-44. Invited error, on the other hand, is a form of estoppel, barring a defendant from requesting to proceed in one manner and then

10

later contending on appeal that that same course of action was erroneous. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004).

¶ 25    Here, in both defendant's first and second amended motions for reduction of sentence, defendant explicitly argued that his sentence was excessive. Defendant's claim in his *pro se* postconviction petition was thus explicitly before the circuit court and could have been brought on direct appeal at the same time as defendant's one-act, one-crime claim. Nothing prevented both claims from being argued on direct appeal, as defendant did argue both claims at the time of his hearing before the circuit court on his second amended motion for reduction of sentence. As defendant could have brought his claim of a disproportionate or excessive sentence on direct appeal but did not, it is forfeited. As forfeited claims are inherently meritless or frivolous, the circuit court did not err in dismissing defendant's *pro se* postconviction petition at the first stage. *Blair*, 215 Ill. 2d at 444-47.

¶ 26    The State also argues that defendant is estopped by the doctrine of invited error from claiming that his sentence is disproportionate as his current 45-year aggregate sentence is explicitly the remedy he asked for on direct appeal: that his conviction and sentence for aggravated domestic battery be vacated and an aggregate sentence of 45 years for the remaining three counts be imposed. Defendant counters that he filed a motion to reduce his sentence at the circuit court level and "thus did not acquiesce to his sentence." However, having found that defendant has been procedurally defaulted via forfeiture, we decline to review the issue.

¶ 27                                    III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court of Macon County.

¶ 29    Affirmed.

11